**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**CAPE GIRARDEAU DIVISION**

| | | |
|---|---|---|
| **TERESA MOWERY and** | : | |
| **GREGORY RUTLEDGE,** | : | |
| **On Behalf of Themselves and** | : | |
| **All Others Similarly Situated,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Case No. 1:20-cv-00013-SPC** |
| | : | |
| **SAINT FRANCIS HEALTHCARE** | : | |
| **SYSTEM,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL**
**OF CLASS ACTION SETTLEMENTAND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

**SECTION:**                                                                **PAGE:**

I.  **INTRODUCTION** ........................................................................... 1

II. **CASE SUMMARY** ......................................................................... 2

    **a.**  **The Data Incident** ............................................................... 2

    **b.**  **Procedural Posture** ............................................................ 4

    **c.**  **The Settlement Agreement** ............................................... 5

        *i.*  *Expense and Time Reimbursement* ..................................................5

        *ii.*  *Credit Monitoring and Identity Theft Restoration* ..........................6

        *iii.*  *Equitable and Prospective Relief* ..................................................6

        *iv.*  *Release* ........................................................................................6

    **d.**  **The Notice and Claims Process** ......................................... 7

        *i.*  *CAFA Notice* ................................................................................7

        *ii.*  *Class Notice* ..................................................................................7

        *iii.*  *Settlement Website and Toll-Free Number* ..................................9

        *iv.*  *Class Response* ..........................................................................10

III. **LEGAL STANDARD** ................................................................. 10

IV. **LEGAL ARGUMENT** .................................................................. 11

    **a.**  **The Individual Notice Provided to Settlement Class Members is the Best Practicable and Should be Approved** .......................................................... 11

    **b.**  **The Settlement Terms are Fair, Reasonable, and Adequate.** ................................... 12

        *i.*  *The Settlement Agreement was the result of arm's length negotiations between the Parties* ..................................................................13

        *ii.*  *The Settlement Agreement provides substantial relief to the Settlement Class, particularly in light of the uncertainty of prevailing on the merits* ..............14

      *iii.*   *Continued litigation is likely to be complex, lengthy, and expensive*……………….15

      *iv.*   *Claims rates provide neither evidence of insufficient notice nor justification for denial of approval*……………………………………………………………………….16

      *v.*   *There have been zero objections to the Settlement Agreement, and only 15 of the over 90,000 Settlement Class Members have requested to be excluded*………17

**V.**  **CONCLUSION**..................................................................................................... **18**

# **TABLE OF AUTHORITIES**

**CASES:**                                                                                      **PAGE(S):**

*Christina A. ex rel. Jennifer A. v. Bloomberg*, 315 F.3d 990 (8th Cir. 2003) .............................. 12

*Eisen v. Carlisle & Jaquelin*, 417 U.S. 156 (1974) ............................................... 11, 12

*Elliott v. Sperry Rand Corp.*, 680 F.2d 1225 (8th Cir. 1982) ....................................... 17

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) ...................................... 12

*Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434 (S.D. Iowa 2001) ................................... 13

*Grunin v. Int'l House of Pancakes*, 513 F. 2d 114 (8th Cir. 1975) ........................................ 10, 11

*Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE),
    2010 WL 2643307 (S.D.N.Y. June 25, 2010) ........................................................... 15

*Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621 (S.D. Iowa 2016) ................................................ 17

*In re Apple iPhone 4 Prods. Liab. Litig.*, No. 10-2188, 2012 WL 3283432
    (N.D. Cal. Aug. 10, 2012) ............................................................................ 16

*In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10
    (D.D.C. 2019) ....................................................................................... 16

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21
    (D. Me. 2013) ....................................................................................... 15

*In re Packaged Ice Antitrust Litig.*, No. 08-MDL-1952, 2011 WL 6209188
    (E.D. Mich. Dec. 13, 2011) .......................................................................... 16

*In re Samsung Top-load Washing. Mach. Mktg., Sales Practices & Prod. Liab.
    Litig.*, No. 17-ML-2792-D, 2020 WL 2616711  (W.D. Okla. May 22, 2020) ......................... 16

*In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, 2015
    WL 7253765 (D. Minn. Nov. 17, 2015) ................................................................ 15

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057
    (8th Cir. 2013) ..................................................................................... 10

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) .......... 10, 12, 13

*LaGarde v. Support.com, Inc.*, No. 13-609, 2013 WL 1283325
    (N.D. Cal. Mar. 26, 2013) ........................................................................... 16

*Lee v. Anthem Inc. Cos.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208
(E.D. Mo. June 10, 2015)..................................................................... 10, 13

*Marshall v. Nat'l Football League*, 787 F. 3d 502 (8th Cir. 2015) ............................. 17

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)............................ 11

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) .................................... 13

*Poertner v. Gillette Co.*, 618 Fed. App'x 624 (11th Cir. 2015)................................. 16

*Pollard v. Remington Arms Co.*, 320 F.R.D. 198 (W.D. Mo. Mar. 14, 2017)................ 12, 16, 17

*Roeser v. Best Buy Co.*, No. 13–1968 (JRT/HB), 2015 WL 4094052
(D. Minn. July 7, 2015).......................................................................... 17

*Schoenbaum v. E. I. Dupont De Nemours Co.*, No. 4:05CV01108 ERW,
2009 WL 4782082 (E.D. Mo. Dec. 8, 2009) ............................................. 13

*Tennille v. W. Union Co.*, 785 F.3d 422 (10th Cir. 2015)...................................... 12

*Trombley v. Bank of Am. Corp.*, No. 08-CV-456, 2012 WL 1599041
(D.R.I. May 4, 2012)............................................................................. 16

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988)...................................... 10, 13, 17

## STATUTES:                                                                    PAGE(S):

Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715 ................................... 7

## OTHER AUTHORITIES:                                                            PAGE(S):

2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011) ........................................ 13

Wright and A. Miller, *Federal Practice and Procedure* (1972).............................. 11

## RULES:                                                                       PAGE(S):

Fed. R. Civ. P. 12(b)(6)........................................................................... 15

Fed. R. Civ. P. 23 ................................................................................. 11

Fed. R. Civ. P. 23(e) .......................................................................... 10, 12

Fed. R. Civ. P. 56 ................................................................................. 15

## I.        INTRODUCTION

On August 17, 2020, this Court preliminarily approved a proposed class action settlement between Plaintiffs Teresa Mowery and Gregory Rutledge ("Plaintiffs") and Defendant Saint Francis Healthcare System ("Saint Francis" or "Defendant"). *See* Prelim. Approval Order, ECF No. 36. Class Counsel's efforts created three distinct benefits for the over 90,000 individuals who are a part of the Settlement Class: a $350,000 Settlement Fund to provide up to $280 in value per Settlement Class Member in the form of (1) reimbursement of out-of-pocket expenses to Settlement Class Members for issues reasonably related to the Data Incident; (2) compensation for time spent dealing with the issues related to the Data Incident; and (3) credit monitoring and identity theft restoration services. In addition to the monetary benefits described above, the Settlement Agreement further provides for equitable relief; Saint Francis committed to carrying out specific data security enhancements to its own systems designed to ensure Settlement Class Members' Personal Identifying Information and Private Health Information is better protected in the future.

Settlement Class Counsel zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement only after extensive investigation, negotiations, an all-day mediation with respected JAMS mediator Judge Morton Denlow (Ret.) and weeks of additional drafting and negotiations. After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—disseminated Notice to the Settlement Class. Individual Notice was provided directly to each of the Settlement Class Members for whom St. Francis had a mailing or e-mail address: 67,268 Settlement Class Members were sent individual postcard notice, and 23,106 Settlement Class Members were sent individual notice via email. The notice provided each Settlement Class Member with information regarding how to reach the Settlement Website, making a claim, and

how to opt-out or object to the Settlement. Out of over 90,000 Settlement Class Members, only 15 have sought to exclude themselves from the Settlement, and *zero* have objected. The claims period is still open, and will run for approximately 14-days after this Court issues a final approval order.

Plaintiffs moved for attorneys' fees, costs, and service awards on October 2, 2020, and here move for final approval of this class action settlement. Because the Notice was the best practicable—and reached 93.55% of the Settlement Class—and the Settlement is fair adequate, and reasonable, this Court should grant final approval.

## II.    CASE SUMMARY[1]

### a.    The Data Incident

Defendant Saint Francis Healthcare System ("Saint Francis" or "Defendant") is in the business of rendering hospital services, medical care, treatment, and health services to persons in Missouri, Arkansas, Illinois, Kentucky, and Tennessee through a network of providers and facilities. *See* Decl. of Gary E. Mason in Supp. of Pls.' Unopposed Mot. for Prelim. Approval of Class Action Settlement ¶ 7.a, ECF No. 32-2 ("Mason MPA Decl."). In the ordinary course of receiving treatment and healthcare services from Saint Francis, patients are required to provide Defendant with sensitive, personal and private information such as: name, address, phone number, and mailing address; date of birth; demographic information; information related to medical history; insurance information and coverage; information concerning an individual's doctor, nurse, or other medical providers; photo identification; employer information; and other information that may be deemed necessary to provide care. Mason MPA Decl. ¶ 7.c.

---

[1] Section II.a-II.c have been largely adopted from the Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, July 31, 2020, ECF No. 32-1. Sections II.d. details the efforts of the Settlement Administrator and Parties to effectuate the Notice program ordered by the Court.

On September 21, 2019, Saint Francis became aware that the computer network that Ferguson Medical Group, L.P. utilized prior to being acquired by Saint Francis experienced a cyberattack on September 20, 2019 (the "Data Incident"). *Id.* at ¶ 7.d. As a result of the Data Incident, all medical records for services provided at Ferguson Medical Group, L.P. prior to January 1, 2019 were made inaccessible to Defendant, and Defendant was asked to pay a ransom to regain access to the records. *Id.* at ¶ 7.e. Saint Francis chose not to pay the ransom to the attacker, and instead chose to attempt to restore access through backup files. *Id.* at ¶ 7.f.

As a result of the Data Incident, any records for services provided at Ferguson Medical Group, L.P. between September 20, 2018 and December 31, 2018, as well as any information scanned into the Ferguson Medical Group, L.P. system (regardless of date) was encrypted and locked away by the ransomware. *Id.* at ¶ 7.g. The encrypted information inaccessible to Saint Francis included the Protected Health Information ("PHI") of Saint Francis patients, including Plaintiffs and proposed Settlement Class Members. *Id.* at ¶ 7.h.

As a result of the ransomware attack, 90,933 individuals' private and personal health information was blocked from Saint Francis and unlawfully accessed. *Id*. at ¶ 6. Plaintiffs allege the Data Incident caused disruption in the provision of medical services to Plaintiffs and the proposed Settlement Class Members, in that (for example) the inability to access certain medical records required patients to expend time and effort resubmitting information previously provided, rescheduling appointments, and undergoing duplicative diagnostic testing. *Id.* at ¶ 7.i. Plaintiffs further believe that their Private Information was stolen (and subsequently sold) in the Data Incident. *Id.* at ¶ 7.j.

b.      **Procedural Posture**

Plaintiffs filed their Complaint in this Court on January 23, 2020. They alleged seven causes of action: (1) negligence; (2) intrusion upon seclusion/invasion of privacy; (3) breach of express contract; (4) breach of implied contract; (5) negligence per se; (6) breach of fiduciary duty; and (7) violation of the Missouri Merchandise Practices Act. Mason MPA Decl. ¶ 10. Plaintiffs sought a combination equitable relief in the form of heightened data security safeguards and credit monitoring services as well as an award of actual, compensatory, and statutory damages and attorneys' fees and costs. *Id.* at ¶¶ 11–13.

On March 20, 2020, Saint Francis filed a motion to dismiss Plaintiffs' complaint in its entirety, arguing that Plaintiffs had failed to assert a plausible claim for relief under any of the alleged causes of action. Mason MPA Decl. ¶ 14; *see also* Def.'s Mot. to Dismiss, ECF No. 14. Prior to Plaintiffs filing their response, the Parties agreed and sought Court approval to mediate their claims. Mason MPA Decl. ¶ 16; *see also* ECF Nos. 18–22.

On April 10, 2020, after meeting and conferring on several occasions, the Parties agreed to mediate with Honorable Morton Denlow (Ret.) of JAMS—who has vast experience with class actions and more specifically, with data privacy matters—and sought leave from the Court to engage in voluntary and private mediation. *Id.* at ¶ 17; *see also* J. Mot. to Mediate, ECF No. 21. Plaintiffs and Saint Francis each fully briefed the issues for Judge Denlow (Ret.), and mediation proceeded via ZOOM Video Conference on June 2, 2020. *Id.* at ¶ 18. After a full day of arms-length negotiations, the parties agreed to a memorandum of understanding describing the key terms of the settlement agreement. *Id.*

The Settlement Agreement required additional weeks of negotiation and drafting to finalize. Over the next few weeks, the Parties diligently negotiated, drafted, and finalized the

settlement agreement, notice forms, and came to an agreement on a claims process and administrator. *Id.* at ¶ 19. The Settlement Agreement was finalized and signed by the Parties in late-July 2020. *Id*. at ¶ 20, Ex. 1.

      **c.**     **The Settlement Agreement**

      The Settlement provides for relief for a Settlement Class defined as:

> All individuals whose Private Information was received, gathered, shared, obtained, or otherwise found itself in the possession of Saint Francis Medical Center and potentially impacted by the cybersecurity incident involving the legacy systems of Ferguson Medical Group discovered on or about September 21, 2019 (the "Ransomware Attack").

Mason MPA Decl., Ex. 1 ¶ 42, ECF No. 32-3 ("Agr."). The Settlement Class was estimated to include approximately 90,933 individuals and specifically excluded Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. *Id.* at ¶ 44. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff. *Id.* at ¶ 42. Each Class Member is eligible to receive up to $280.00 in value—including $180.00 in expense and time reimbursements and credit monitoring services valued at $100.00. *Id.* at ¶ 47.

          *i.*     *Expense and Time Reimbursement*

      Under the terms of the Settlement Agreement, Saint Francis will make a fund of $350,000 ("Settlement Payment") available to provide a combination of credit monitoring and expense reimbursement for Settlement Class Members who make a valid claim. *Id.* at ¶ 47.

      Every Settlement Class Member is eligible to receive up to $280.00 in value. First, each can recover $180.00 worth of expense reimbursements, including up to $80.00 for four hours of time spent dealing with issues reasonably arising from the breach. Agr. ¶ 47. These funds are to

be paid from the Settlement Payment. Agr. ¶ 47. Claims for medical and expense reimbursement, time compensation and credit monitoring are capped at $350,000: should the claims made exceed the Settlement Payment, payments to individual Class Members will be reduced pro rata. *Id.*

      *ii.*        *Credit Monitoring and Identity Theft Restoration*

Additionally, Settlement Class Members are eligible to sign up for Experian Credit Monitoring and Identify Theft Restoration Services for a period of twelve (12) months to be covered by Saint Francis. *Id.* This service is valued at $100.00 per person. *See Id.* at Ex. E.

      *iii.*     *Equitable and Prospective Relief*

In addition to the monetary relief and credit monitoring services provided, Saint Francis has also committed to providing equitable relief in the form of data security enhancements. Agr. ¶ 50. Saint Francis has committed to: (a) review firewall rules to remove those not used, and update the firewall to automatically update with the latest patches and updates; (b) limit ability of legacy systems to remotely access Saint Francis's network; (c) implement a vulnerability management program to scan network for vulnerable components; (d) remove Remote Desktop Protocol (RDP) from vendor access solution; (e) assess and further implement a multi-factor authentication for VPN access; (f) develop and implement increased password complexity and expiration requirements; (g) review and enhance cybersecurity training for high-value targets; and (h) implement geo-location blocking for traffic directed to certain outbound IP addresses. *Id.*

      *iv.*     *Release*

The release is tailored to the claims that have been plead or could have been plead in this case. Mason MPA Decl. ¶ 31. Settlement Class Members who do not exclude themselves from the Settlement Agreement will release claims against Defendant and its affiliates related to the Data

Incident and/or the recordkeeping or data security practices in place at the time of the Data Incident. Agr. ¶¶ 51–52.

### d.      The Notice and Claims Process

The notice and claims process was implemented pursuant to the Court's preliminary Approval Order. The estimated cost for Settlement Administration, including both notice and claims administration, is $85,000 all of which is to be borne by Defendant separate and apart from the Settlement Fund. *See* Decl. of Gary E. Mason in Supp. of Pls.' Mot. for Fees, Costs, & Service Awards ¶ 14, ECF No. 37-2 ("Mason Fees Decl.").

### i.      CAFA Notice

Pursuant to the federal Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, on August 27, 2020 the Settlement Administrator sent a CAFA notice packet (or "CAFA Notice") to 57 federal and state officials. *See* Decl. of Ramsey Engler Regarding Implementation of Notice & Settlement Administration ¶ 5, Ex. A ("Engler Decl."), filed herewith. The CAFA Notice was mailed by certified mail to 56 officials, including the Attorneys General of each of the 50 states, the District of Columbia and the U.S. Territories. *Id.* The CAFA Notice was also sent by United Parcel Service ("UPS") to the Attorney General of the United States. *Id.*

### ii.      Class Notice

On August 21, 2020, Defendant provided the Settlement Administrator with an electronic file containing contact information including (i) names, (ii) mailing addresses, and (iii) email addresses. Engler Decl. ¶ 6. The Settlement Administrator loaded the Settlement Class Data into a dedicated database created for the purpose of the Settlement Administration. *Id.* at ¶ 7. The Settlement Administrator also assigned unique identifiers to all records to maintain the ability to track them throughout the Settlement administration. *Id.*

After receiving the Settlement Class Data, the Settlement Administrator checked all mailing addresses against the National Change of Address database maintained by the United States Postal Service. *Id.* at ¶ 11. In addition, the addresses were certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and verified through Delivery Point Validation to verify the accuracy of the addresses. *Id.* To the extent that any Class Member had filed a USPS change of address request, and the address was certified and verified, the current address listed in the NCOA database was used in connection with the Notice mailing. *Id.*

On July 31, 2020, the Settlement Administrator sent Postcard Notice by U.S. Mail to 67,268 Settlement Class Members not able to be noticed by email but who had a valid mailing address. *Id.* at ¶ 9. Pursuant to Section IV.60(a) of the Agreement, Settlement Administrator caused the Court-approved Notice to be formatted for distribution by mail as a postcard notice including a unique identifier and a detachable, postage pre-paid claim form. *Id.*; *see also* Engler Decl., Ex. C. As of November 2, 2020, 2,839 Postcard Notices have been returned as undeliverable. Engler Decl. ¶ 10. As per the Agreement, Settlement Administrator has and will continue to perform reasonable address tracing and re-mailing the Postcard Notice where an updated mailing address is located. *Id.* As of November 3, 2020, the Settlement Administrator has re-mailed 1,546 Postcard Notices. *Id.*

On July 31, 2020, the Settlement Administrator also sent the Email Notice to 23,106 Settlement Class Members pursuant to Section IV.59 of the Agreement. *Id.* at ¶ 8. The Court-approved Notice was formatted for electronic distribution by email and sent to Settlement Class Members for whom an email address was available. *Id.*; *see also* Engler Decl., Ex. B. Each Email Notice included the Settlement Class Member's unique identifier and was sent in a manner

calculated to avoid being caught and excluded by spam filters or other devices intended to block mass email. *Id.*

The Settlement Administrator estimates the notice reached 93.55% of the Class. *Id.* at ¶ 12.

    *iii.*        *Settlement Website and Toll-Free Number*

Through the notice process, Settlement Class Members were provided information the web address of the Settlement Website and a toll-free telephone number they could use if they wanted additional information about the Settlement. *Id.* at ¶¶ 13, 15.

Pursuant to Section II.39 of the Agreement, on August 31, 2020, the Settlement Administrator launched the Settlement Website, www.MoweryRansomwareSettlement.com, containing detailed information about the Settlement. *Id.* at ¶ 13. The Settlement Agreement, Order Granting Preliminary Approval of Class Action Settlement, and Long Form and Summary Notices in English and Spanish were posted on the Settlement Website so that potential claimants may review and download them. *Id.* The website also contains a summary of options available to Settlement Class Members, deadlines to act, and provides answers to frequently asked questions. Settlement Class Members are also able to file a Claim online via the website, or download a paper Claim Form, which they could then file by mail or email. *Id.* References to the website were prominently displayed in all notice documents. *Id.* As of November 2, 2020, there have been 7,207 page views in 1,414 website sessions. *Id.* at ¶ 14.

On August 31, 2020, the Settlement Administrator launched a toll-free automated information line, 877-890-8129. *Id.* at ¶ 15. By calling the toll-free number, Settlement Class Members can listen to answers to frequently asked questions. *Id.* This automated system is available 24 hours per day, 7 days per week. *Id.* As of November 2, 2020, the toll-free number has handled 1,071 calls representing 3,685 minutes of use. *Id.* at ¶ 16.

iv.     *Class Response*

Through the notice process, Settlement Class Members were also given the means to make a claim, request exclusion, or object to the Settlement Agreement. As of November 2, 2020, the Settlement Administrator has received 15 requests for exclusion[2] and *zero* objections to the settlement. *Id.* at ¶¶ 17–18. Class Counsel have also received *zero* objections to the Settlement Agreement. Mason Fees Decl. ¶ 16. As November 2, 2020, 421 claims have been made for monetary compensation and/or credit monitoring and identity theft restoration services. *Id.*

The claims period will remain open until December 1, 2020. *Id.*

## III.     LEGAL STANDARD

In approving a class action settlement, a Court must consider whether it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making that determination a district court considers: (1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement. *Lee v. Anthem Inc. Cos.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *1 (E.D. Mo. June 10, 2015) (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013); *see also Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005).

Before a court can reach that analysis however, it must ensure that interested parties were adequately informed of the Settlement Agreement and provided an opportunity to voice their objections. *Grunin v. Int'l House of Pancakes*, 513 F. 2d 114, 123 (8th Cir. 1975). Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action "shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or

---

[2] The parties will submit a supplemental filing providing the Court with the names of the individuals who have submitted valid requests for exclusion.

compromise shall be given to all members of the class in such manner as the court directs." The purpose of the approval procedure is to ensure that the interests of absent class members are adequately protected. *Grunin v. Int'l House of Pancakes*, 513 F.2d at 123. The district court acts as a fiduciary who serves as guardian of the rights of the absent class members, and the court may approve a settlement only if the proponents of it show that the settlement is fair, reasonable, and adequate. *Id.*

## IV.   LEGAL ARGUMENT

### a.   The Individual Notice Provided to Settlement Class Members is the Best Practicable and Should be Approved.

Because an action maintained as a class suit under Rule 23 has res judicata effect on all members of the class, due process requires that notice of a proposed class settlement be provided to settlement class members. *Grunin v. Int'l House of Pancakes*, 513 F.2d at 123 (citing *Eisen v. Carlisle & Jaquelin*, 417 U.S. 156, 172–177 (1974). What a court must determine in each individual case is that the notice provided was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). In addition, the notice must convey the required information and allow a reasonable time for those interested in making an appearance to do so. *Grunin v. Int'l House of Pancakes*, 513 F.2d at 123 (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. at 314). Because Rule 23 provides that notice must be given "in such a manner as the court directs," the mechanics of the notice process are left to the broad discretion of the court. *Grunin v. Int'l House of Pancakes*, 513 F.2d at 123 (citing Wright and A. Miller, *Federal Practice and Procedure* at 237 (1972).

The Parties caused individual notice to be provided via email to 23,106 Settlement Class Members, and via mail to the 67,268 Settlement Class Members whose email address was

unavailable. Engler Decl. ¶¶ 8–9. This notice was the best practicable under the circumstances. It was clear, concise, and pointed each Settlement Class Member to the resources necessary for them to get additional information, review pleadings, make a claim, request exclusion, object, or to reach class counsel should they have any additional questions. *See id.* at Exs. B, C. The U.S. Supreme Court has specifically held that individualized notice by mail to the last known address is the "best notice practicable" in a class action contest. *Eisen v. Carlisle & Jaquelin*, 417 U.S. at 174–177. In contrast with notice via publication, providing individualized mail and email notice to Settlement Class Members—in addition to the Settlement Administrator' efforts to search for, locate, and confirm current information for Settlement Class Members—*ensures* that Settlement Class Members are provided with the best practicable notice of the Settlement, and the opportunity to make a claim, opt-out, or object. Courts regularly approve the use of email to directly notify potential class members of a class action settlement. *Pollard v. Remington Arms Co.*, 320 F.R.D. 198, 212 (W.D. Mo. Mar. 14, 2017) (finding notification via an email list, and U.S. mail where an email address was not available was reasonable (citing *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 289 (6th Cir. 2016))); *Tennille v. W. Union Co*., 785 F.3d 422, 440 (10th Cir. 2015).

> **b.    The Settlement Terms are Fair, Reasonable, and Adequate.**

Courts have recognized that a class action settlement is a private contract negotiated between the parties. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 932 (citing *Christina A. ex rel. Jennifer A. v. Bloomberg*, 315 F.3d 990, 992 (8th Cir. 2003). "Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Id.*

A settlement agreement is "presumptively valid[,]" and the district court need not make a detailed investigation consonant with trying the case. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 932 (citing *Van Horn v. Trickey,* 840 F.2d at 607 (citations omitted)). A district court must however provide a basis for determining that its decision rests on "well-reasoned conclusions" and is not "mere boilerplate." *Id.* "The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 932 (quoting *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1150 (8th Cir. 1999) (internal quotations omitted)).

Because the Settlement Agreement here is not the product of fraud or collusion, does not have a single objection from any Settlement Class Member after direct individual notice was provided, and does in fact provide the opportunity for significant relief for Settlement Class Members, final approval should be granted. *See Schoenbaum v. E. I. Dupont De Nemours Co*., No. 4:05CV01108 ERW, 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2009).

   i. *The Settlement Agreement was the result of arm's length negotiations between the Parties.*

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011); *see also Lee v. Anthem Inc. Cos.*, 2015 WL 3645208, at *1 (quoting *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001). Here, the Settlement resulted from good faith, arms'-length negotiations over many months, and with the assistance of Honorable Morton Denlow (Ret.) of JAMS, who has extensive experience with both class actions generally and data privacy matters in particular. Mason MPA Decl. ¶ 17. After fully briefing the issues, the Parties attended a full-day mediation via ZOOM Video Conference where, with the assistance of Judge

Denlow, the parties eventually agreed to a memorandum of understanding. *Id.* at ¶ 18. Following the mediation, the Parties spent weeks drafting and finalizing the agreement presently before the Court. *Id.* at ¶ 19. Accordingly, the presumption of reasonableness should apply here.

> ii.     *The Settlement Agreement provides substantial relief to the Settlement Class, particularly in light of the uncertainty of prevailing on the merits.*

The Settlement guarantees Class Members the opportunity for real relief for harms and assurance that they are less likely to be subject to similar breaches due to Saint Francis' data security systems in the future. Settlement Class Members who submit valid claims are eligible to receive up to $100 in reimbursements for medical expenses incurred as a result of the Data Incident, as well as reimbursement at the rate of $20 per hour for up to four (4) hours spent addressing issues pertaining to the Data Incident. In addition to the $180 in cash, Settlement Class Members are also eligible to claim twelve (12) months of data protection and identity theft restoration services provided by Experian, valued at $100 per person. Agr. ¶ 47. Additionally, Saint Francis will be implementing extensive security enhancement protocols that will guarantee that Settlement Class Members' personal identifying information and personal health information will be better safeguarded in the future. Agr. ¶ 50. This relief is offered equally to all settlement class members.

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that Saint Francis will assert a number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiffs would have to immediately survive the currently pending motion to dismiss filed by Defendant in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond*

*v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

Plaintiffs dispute the merits of Saint Francis' motion to dismiss, and the defenses Saint Francis will likely assert—but it is obvious that their success at trial is far from certain. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

   *iii.*   *Continued litigation is likely to be complex, lengthy, and expensive.*

The costs, risks, and delay of continued litigation weigh in favor of settlement approval. Although Plaintiffs are confident in the merits of their claims, the risks discussed above cannot be disregarded. Aside from the potential that either side will lose at trial, the Plaintiffs anticipate incurring substantial additional costs in pursuing this litigation further. Should litigation continue, Plaintiffs would need to defeat Defendant's motion to dismiss, likely counter a later motion for summary judgement, and both gain and maintain certification of the class. The level of additional costs would significantly increase as Plaintiffs began their preparations for the certification argument and if successful, a near inevitable interlocutory appeal attempt. As at least one court has found in this Circuit, because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).

Despite the early stage of litigation, Plaintiffs here were able to complete an independent investigation of the facts to reach a full understanding of the value of the case, as well as the attendant risks of continued litigation. Mason MPA Decl. ¶¶ 3, 21. It is the strong opinion of proposed Settlement Class Counsel that the Settlement presents a favorable result for the Class. *Id.*

      *iv.      Claims rates provide neither evidence of insufficient notice nor justification for denial of approval.*

Though lower than we would like to see, the claims rate of approximately .46% achieved thus far is neither final nor a justification to find notice insufficient. As the Western District of Missouri has found, "[c]ourts around the country have approved settlements where the claims rate was less than one percent." *Pollard v. Remington Arms Co.*, 320 F.R.D. 198, 215 (W.D. Mo. 2017) (citing, *e.g., LaGarde v. Support.com, Inc.*, No. 13-609, 2013 WL 1283325, at *2–10 (N.D. Cal. Mar. 26, 2013) (approving class action settlement with a claims rate 0.17% and noting 92% of the class members received notice via email)); *In re Apple iPhone 4 Prods. Liab. Litig.*, No. 10-2188, 2012 WL 3283432, at *1–3 (N.D. Cal. Aug. 10, 2012) (approving a class action settlement with claims rate between 0.16% and 0.28%); *Trombley v. Bank of Am. Corp.*, No. 08-CV-456, 2012 WL 1599041, at *2 (D.R.I. May 4, 2012) (approving a class action settlement that garnered 0.9% claims rate); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-1952, 2011 WL 6209188, at *14 (E.D. Mich. Dec. 13, 2011) (approving a class action settlement with a claims rate of less than 1%); *Poertner v. Gillette Co.*, 618 Fed. App'x 624, 625–26 (11th Cir. 2015) (same).

Moreover, "low claims rates are neither indicative of poor notice nor a reason to necessarily deny settlement approval." *In re Samsung Top-load Washing. Mach. Mktg., Sales Practices & Prod. Liab. Litig.*, No. 17-ML-2792-D, 2020 WL 2616711, at *11 (W.D. Okla. May 22, 2020) (citing *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 24–25 (D.D.C. 2019)

(noting that claims rates are frequently between 0.25% and 2%). Further, Settlement Class Members here have approximately one more month—or approximately two weeks after the final approval hearing—to make a claim. Courts often approve settlements before the deadline to make claims. *Pollard v. Remington Arms Co.*, 320 F.R.D. at 215 (collecting cases).

> v.      There have been zero objections to the Settlement Agreement, and only 15 of the over 90,000 Settlement Class Members have requested to be excluded.

Settlement Class Member response has demonstrated support for the Settlement Agreement. Only 15 of the over 90,000 Settlement Class Members have requested to be excluded from the Settlement, and *zero* have objected to any of the terms of the Settlement Agreement. Eighth Circuit courts regularly approve class action settlements, even when almost half of the class objects. *Marshall v. Nat'l Football League*, 787 F. 3d 502, 513 (8th Cir. 2015) (approving settlement where less than 10% of the class, including six out of 23 class representatives objected) (citing *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (approving class settlement where 180 of 400 class members objected)); *see Elliott v. Sperry Rand Corp.*, 680 F.2d 1225, 1226–1227 (8th Cir. 1982) (approving class settlement where 790 of approximately 3,000 objected, including named plaintiffs). The lack of objections demonstrates a level of support for the Settlement. Similarly, class action settlements are regularly approved with similar or higher exclusion rates. *See, e.g., Roeser v. Best Buy Co.*, No. 13–1968 (JRT/HB), 2015 WL 4094052, at *7 (D. Minn. July 7, 2015) (finding class reaction to be largely supportive where 150 individuals excluded themselves from a class of 213,168, and only one individual objected); *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 627 (S.D. Iowa 2016) (granting final approval where 219 individuals excluded themselves from a class of 2.7 million). Here, only 15 individuals—at least two of which are the minor children of an adult Settlement Class Member—have requested exclusion from the Settlement. This too weighs in favor of granting final approval.

## V.        CONCLUSION

Settlement Class Counsel, with the help of Plaintiffs, have made significant benefits available to class members during a time where the law surrounding data breaches is evolving and uncertain. The Settlement Class Members have been provided direct and individual notice of the Settlement, have been provided additional resources by which they can get more information about the Settlement Agreement, and the claims period will remain open through December 1, 2020. Zero Settlement Class Members have objected to either the Settlement Agreement or to Plaintiffs' request for fees, costs, and service awards. For these reasons, for the arguments for certification and appointment of Class Representatives and Counsel set forth in Plaintiffs' Motion for Preliminary Approval (ECF No. 32), and because the Settlement Agreement is fair, adequate, and reasonable, Plaintiffs respectfully request this Court grant their motion for final approval.


Dated:  November 3, 2020                        Respectfully submitted,


                                                /s/ Gary E. Mason
                                                Gary E. Mason (*admitted pro hac vice*)
                                                **MASON LIETZ & KLINGER LLP**
                                                5101 Wisconsin Avenue NW, Suite 305
                                                Washington, D.C. 20016
                                                Phone: (202) 429-2290
                                                Fax: (202) 429-2294
                                                gmason@masonllp.com

                                                Gary M. Klinger (*admitted pro hac vice*)
                                                **MASON LIETZ & KLINGER LLP**
                                                227 W. Monroe Street, Suite 2100
                                                Chicago, IL 60606
                                                Phone: (202) 975-0477
                                                Fax: (202) 429-2294
                                                gklinger@masonllp.com

Brandon M. Wise – Mo. Bar #67242
**PEIFFER WOLF CARR & KANE, APLC**
818 Lafayette Avenue, Floor 2
St. Louis, MO 63104
Phone: (314) 833-4825
bwise@pwcklegal.com

*Attorneys for Plaintiffs and the Class*